Andrew J. Ceresney, Esq.
Arian M. June, Esq.*
Stephan J. Schlegelmilch, Esq.*
Mark D. Flinn, Esq.*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **EDWARD F. HACKERT,** | |
| **Plaintiff,** | |
| **vs.** | **Case No.** |
| **U.S. SECURITIES AND EXCHANGE COMMISSION,** | |
| **Defendant.** | |

## COMPLAINT

Plaintiff Edward F. Hackert, for his complaint against Defendant U.S. Securities and Exchange Commission (the "SEC" or "Commission"), alleges as follows:

## INTRODUCTION

1.      Mr. Hackert is a Certified Public Accountant ("CPA"), licensed to practice in New York.  Through its issuance of an Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Sections 4C and 21C of the Securities Exchange Act of 1934, and Rule 102(e) of the Commission's Rules of Practice, and Notice of Hearing, dated January 18, 2024 (the "OIP"), the SEC has instituted an administrative proceeding against Mr. Hackert (the "Administrative Proceeding").  The OIP alleges that Mr. Hackert caused his employer, Marcum LLP ("Marcum"), to violate Rule 2-02(b)(1) of

Regulation S-X through his supposed noncompliance with various Public Company Accounting Oversight Board ("PCAOB") auditing standards between 2012 and 2022, and that such noncompliance also constituted "improper professional conduct" within the meaning of SEC Rule of Practice 102(e)(1)(ii).

2.      This action seeks declaratory and injunctive relief to prevent the SEC from violating Mr. Hackert's constitutional rights by subjecting him to an unconstitutional Administrative Proceeding.

3.      Specifically, Mr. Hackert seeks a declaration that:

a.      The Administrative Proceeding deprives Mr. Hackert of his right to due process under the Fifth Amendment;

b.      The Administrative Proceeding violates Mr. Hackert's Seventh Amendment right to a jury trial; and

c.      The assignment of the Administrative Proceeding to, and its conduct by, an Administrative Law Judge whose appointment and removal is insulated from control by the President would violate Article II of the Constitution.

4.      Mr. Hackert also seeks injunctive relief enjoining the SEC from proceeding with this unconstitutional Administrative Proceeding, including an order enjoining the appointment of an Administrative Law Judge to preside over the proceeding.

## **PARTIES**

5.      Mr. Hackert is a well-respected accountant and partner in the Assurance Services division of Marcum.  He practices out of Marcum's New York City office, and he resides in East Meadow, New York.

6.      The SEC is an independent agency of the United States, headquartered in Washington, D.C., and with a regional office in New York City.

**JURISDICTION AND VENUE**

7.      This action challenges the constitutionality of the Administrative Proceeding brought by the SEC against Mr. Hackert.  Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which provides that federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

8.      Mr. Hackert's claims are not precluded by any other statute.  This Court may consider claims, like those advanced by Mr. Hackert here, "that the structure, or even existence, of an agency violates the Constitution," and the "ordinary statutory review scheme does not preclude a district court from entertaining these extraordinary claims."  *See Axon Enter., Inc. v. FTC*, 598 U.S. 175, 180, 195 (2023).

9.      The Court has personal jurisdiction over the SEC, which has a regional office in this district.

10.      Mr. Hackert works in Marcum's New York City office, and much of the conduct at issue in the OIP occurred within this district, so venue is proper pursuant to 28 U.S.C. §§ 1391(b), (c), and (e).

**FACTS**

11.      Mr. Hackert has over 38 years of experience in the field of public accounting including work for several large accounting firms (*e.g.*, the firms now known as PricewaterhouseCoopers LLP, Deloitte, and Grant Thornton LLP).  In 2006, he was promoted to his current position as a partner in Marcum's audit practice.

12.     Since joining Marcum, Mr. Hackert has been a critical resource for the firm and its clients on technical accounting issues, and until the SEC initiated the Administrative Proceeding against him, Mr. Hackert had an entirely unblemished professional career.  In his multi-decade career, he has never before been accused of professional misconduct, nor has he been subject to professional discipline by the SEC, the PCAOB, the American Institute of Certified Public Accountants ("AICPA"), any state accountancy board, or any other regulatory or professional body.

A.      **The OIP**

13.     Even though the constitutionality of SEC administrative proceedings will soon be clarified by the Supreme Court's forthcoming decision in *SEC v. Jarkesy*, the SEC refused to wait, and on January 18, 2024, the SEC initiated the Administrative Proceeding against Mr. Hackert by filing the OIP.

14.     The January 18, 2024 OIP alleged that between 2012 and 2022, Mr. Hackert failed to properly supervise numerous audit engagements to ensure that the audits were performed in compliance with PCAOB auditing standards, including by failing to review the work of the engagement team, appropriately document his review, and assemble complete and final audit documentation by the relevant deadline.  Based on the foregoing, the OIP alleges that Mr. Hackert caused Marcum to violate Rule 2-02(b)(1) of Regulation S-X, since Marcum's audit reports stated that the audits had been performed in accordance with PCAOB auditing standards, and that, as a result, Mr. Hackert engaged in "improper professional conduct" within the meaning of SEC Rule of Practice 102(e)(1)(ii).

15.     The OIP's allegations are entirely unprecedented.  Other than second-guessing a single real-time accounting judgment relating to the classification of certain income during the

audit of one issuer, the OIP does not cite a single audit failure, false financial statement, harmed investor, or impeded regulator.

16.     The SEC has never litigated (and never settled) a case against an individual auditor solely for documentation-related issues as minor and unsubstantiated as those the SEC has alleged in the OIP.  And a review of the SEC's and PCAOB's settled orders involving violations of the same PCAOB rules cited in the OIP shows significant differences between the conduct discussed therein and the allegations concerning Mr. Hackert.  The settled orders describe audit documentation violations that involve intentionally backdating work papers to conceal the timing of delinquent audit procedures,[1] blank work papers that were signed off and placed in audit files,[2] additions and alterations made to incomplete audit files *years* beyond documentation completion dates in order to mislead PCAOB investigators,[3] forged signatures, and fake work papers created to document testing never performed.[4]  The supervision violations highlighted in the SEC's settled orders similarly involved oversight of backdated and falsified documents[5] or engagement quality reviewers who lacked objectivity from the underlying engagement teams.[6]  None of this sort of misconduct is alleged here.

17.     To make matters worse, the OIP contends that hundreds of Mr. Hackert's audits spanning a decade had deficient documentation, but the SEC Staff has never bothered to collect (let alone examine) the audit work papers for all but a handful of these engagements.  The OIP also misinterprets the relevant PCAOB standards, overlooking the express terms of the standards and applying incorrect interpretations to find non-existent violations.

---

[1] *See In re Richard J. Bertuglia, et al.*, Exchange Act Release No. 84419 (Oct. 12, 2018).
[2] *See In re KPMG India, et al.*, PCAOB Order 105-2022-033 (Dec. 6, 2022).
[3] *See In re PLS, CPA, et al.*, Exchange Act Release No. 92361 (July 9, 2021).
[4] *See In re Jin Tae Kim*, PCAOB Order 105-2022-013 (Aug. 16, 2022).
[5] *See In re Peter Messineo, et al.*, Exchange Act Release No. 76607 (Dec. 10, 2015).
[6] *See In re AWC, et al.*, PCAOB Order 105-2016-016 (May 18, 2016).

18.     As far as remedies are concerned, the OIP seeks an order from the Commission imposing injunctive relief—specifically, requiring Mr. Hackert to "cease and desist from committing or causing violations of" Rule 2-02(b)(1) of Regulation S-X—and barring him from appearing or practicing before the SEC as an accountant.

19.     The OIP does not specifically seek a monetary penalty from Mr. Hackert, but on January 29, 2024, the SEC Staff informed Mr. Hackert by letter that they will ask the Commissioners to impose a monetary penalty if they deem it "appropriate."

20.     Soon after filing, the SEC Staff conceded that the OIP they filed had numerous "inadvertent errors," and on February 5, 2024, the SEC Staff moved to file an amended OIP. According to the SEC Staff's motion, "[a]fter the OIP was filed, on January 23, 2024, Division staff discovered errors in how the number of late sign-offs by [Mr.] Hackert, which occurred after the report release date, was calculated for certain audits described in the OIP." The SEC Staff has declined to share with Mr. Hackert any detailed information regarding the errors.

21.     As of the filing of this complaint, the motion for leave to amend the OIP remains pending.

22.     Mr. Hackert has not yet filed a response to the OIP's charges, but he denies the allegations in the OIP, and he denies that any of the relief set forth in the OIP (or that the SEC Staff may later deem "appropriate") is warranted.

## B.     Administrative Proceedings Generally

23.     The SEC is an independent agency that may bring enforcement actions in either federal district court or through in-house administrative proceedings. *See* 15 U.S.C. §§ 78d-1(a), 78u(d), 78u-1, 78u-2, and 78u-3.

24.     The SEC employs Administrative Law Judges or "ALJs" who are, typically, assigned to preside over administrative proceedings.  As the Supreme Court observed in *Axon*, when the Commission brings an enforcement action as an administrative proceeding, "it typically delegates the initial adjudication to an ALJ" with authority "to resolve motions, hold a hearing, and then issue a decision."  598 U.S. at 181.  In short, an ALJ assigned to hear an SEC enforcement action has authority "much like a regular trial judge."  *Id*. (citing 16 C.F.R. §§ 3.21-3.56 (2021); 17 C.F.R. §§ 201.221-201.360 (2021)).

25.     The Supreme Court has previously held that SEC ALJs had been appointed to their positions in violation of Article II of the Constitution, which vests the Executive Power of the United States in the President.  *See Lucia v. SEC*, 585 U.S. 237, 251-52 (2018).  Unanswered by the *Lucia* decision was whether ALJs' insulation from removal also amounted to a constitutional violation.  *See id.* at n.1 (declining to address removal).  However, the United States Court of Appeals for the Fifth Circuit recently held that "the statutory removal restrictions for SEC ALJs are unconstitutional."  *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023).

26.     Notwithstanding the stakes at issue in administrative proceedings given the remedies ALJs and the Commission can impose, respondents are not afforded the same rights and protections they would have in federal district court had the SEC chosen to file its case there. For example, respondents in SEC administrative proceedings are denied their Seventh Amendment right to a jury trial, and the Federal Rules of Evidence—specifically, the limitations on the SEC Staff's use of hearsay evidence—do not apply.

27.     Respondents' ability to investigate and defend their cases through discovery is also significantly curtailed in SEC administrative proceedings.  Even though the SEC Staff is

given years to issue subpoenas, compel sworn testimony, review documents, line up expert witnesses, and otherwise assemble its case before filing an enforcement action, respondents are limited to three depositions (plus another two upon request, but only if the ALJ agrees), cannot serve written discovery, are required to ask permission to serve subpoenas, and typically must proceed to "trial" within 10 months of the OIP's filing.

28.    Perhaps unsurprisingly, the SEC has an outsized success rate in administrative proceedings when compared to federal district court.  Over a five-year period from 2010 to 2015, the SEC won 90% of contested administrative proceedings, compared to a 69% success rate in contested cases brought in federal court.  *See Axon*, 598 U.S. at 215-16 (Gorsuch, J. concurring).

29.    Following the evidentiary hearing, the ALJ must issue an "initial decision," which a respondent may appeal to the five-member Commission.  Accordingly, "[a]gencies like the SEC . . . combine the functions of investigator, prosecutor, and judge under one roof."  *Id.*  The cases are preapproved by the five-member Commission, investigated and prosecuted by employees of the Commission, adjudicated by employees of the Commission, and appealed to the Commission.

30.    Only after the Commission enters a final order can respondents appeal to a federal court, but the circuit courts hearing such appeals are constrained to treat Commission findings as "conclusive" if supported by "substantial evidence."  *See* 15 U.S.C. §§ 78y(a)(1) and (4).

31.    The SEC's combination of prosecutorial and adjudicative functions has a history of problems.  For example, on June 2, 2023, the SEC issued a statement disclosing a "control deficiency" related to the separation of enforcement and adjudicatory functions within the agency.  The deficiency allowed "in a number of adjudicatory matters, administrative support staff from Enforcement responsible for maintaining Enforcement's case files access[ to]

Adjudication memoranda via [the Office of the Secretary]'s databases.  In many instances, those administrative staff also emailed Adjudication memoranda to other administrative staff for potential upload to Enforcement databases; once uploaded, the memoranda became accessible more broadly to Enforcement staff."  Statement, Second Commission Statement Relating to Certain Administrative Adjudications (June 2, 2023).[7]

32.    In addition to being rife with potential "control deficiencies," SEC administrative proceedings are also notoriously slow, despite their streamlined nature being one of the purported benefits of such a proceeding.  It is not unusual for respondents' cases to languish for years pending the issuance of appealable Commission orders.  Indeed, in *Axon*, the Supreme Court noted that the underlying SEC administrative proceeding "dragged on for seven years." 598 U.S. at 216 (Gorsuch, J. concurring).

33.    *Axon* was not a one-off in this regard.  Mr. Stewart has been waiting more than three years for a ruling on his dispositive motion in *In re Sean R. Stewart*, Admin. Proc. File No. 3-19951.  The SEC Staff's dispositive motion has also been pending for more than three years in *In re Mohammed Ali Rashid*, Admin. Proc. File No. 3-20139.  Two requests for Commission review of FINRA disciplinary rulings have each been pending for almost three and a half years. *See In re Eric S. Smith*, Admin. Proc. File No. 3-20127; *In re Jennifer Ann Johnson*, Admin. Proc. File No. 3-20120.  Mr. Aggarwal has had a motion to reconsider pending for more than two years.  *See In re Sandeep Aggarwal*, Admin. Proc. File No. 3-15672.[8]  And, on February 13, 2024, the Commission finally ruled on Mr. Uppal's motion to vacate his collateral bars, which

---

[7] https://www.sec.gov/news/statement/second-commission-statement-relating-certain-administrative-adjudications#

[8] The SEC order at issue in *Aggarwal* was largely premised on a 2014 criminal case that the Department of Justice dismissed via *nolle prosequi* in 2020.  Nevertheless, Mr. Aggarwal's motion requesting Commission reconsideration languishes.

had been pending since July 2019—*i.e.*, for four and a half years.  *See In re Sachin K. Uppal*, Admin. Proc. File No. 3-16706.

34.     An SEC regulation requires the Commission to issue final, appealable orders within eight months of the conclusion of briefing,  *see* 17 C.F.R. § 201.900(a)(1)(iii), but the Commission routinely issues orders exempting itself from this requirement.  For example, the Commission granted itself *seven* consecutive 90-day extensions of the deadline to issue a decision in *In re Mark Feathers*, Admin. Proc. File No. 3-15755, before being forced to drop that case altogether due to the "control deficiencies" discussed above.  Prior to its abandonment, Mr. Feathers' administrative proceeding lasted more than nine years.

35.     Absent an action premised, as here, on *Axon*, respondents in SEC administrative hearings are often trapped in limbo for years, unable to appeal to a federal court (with its deferential standard of review) due solely to the Commission's delay.

## C.     Mr. Hackert's Administrative Proceeding

36.     The OIP issued by the SEC here differs markedly from the typical OIP discussed above.  Specifically, it provides that the five-member Commission, not an ALJ, will preside over Mr. Hackert's Administrative Proceeding.

37.     On information and belief, the five Commissioners have never before presided over an evidentiary hearing.

38.     Having the five Commissioners rule on any dispositive motion Mr. Hackert may file and preside over Mr. Hackert's evidentiary hearing eliminates all of the supposed benefits of an administrative proceeding—*i.e.*, a speedy hearing held before an expert fact-finder who is subject to a strict deadline for a decision that is appealable to the Commission.

39.     The Commission's elimination of an ALJ in Mr. Hackert's Administrative

Proceeding is likely an effort to "fix" the constitutional violations relating to the ALJs' removal,

a subject of the *Jarkesy* case now before the Supreme Court, but the agency's attempted cure

serves only to create new logistical problems and constitutional violations.  Any proceeding held

before the five-member Commission simply cannot occur in a way that protects Mr. Hackert's

rights, and such a proceeding would necessarily deny Mr. Hackert due process.

40.     Indeed, given these grave concerns, Mr. Hackert has on several occasions

submitted requests to the SEC Enforcement Staff for an explanation regarding how and by whom

the proceeding will actually be conducted and what rules, if any, will apply:

> And finally, your letter seems to misunderstand our [January 24, 2024] questions
> regarding whether and how the Commission will preside over this matter.  Our
> question was not what the Commission will ultimately do vis-à-vis a hearing in
> this matter or the other issues we raised.  Rather, our question was (and remains):
> what is the Division's position on these issues?  For example, is it the Division's
> position that the Commission (or any designee) must timely rule on any
> dispositive motion Mr. Hackert files before a hearing commences?  What is the
> Division's position on whether the five-member Commission must itself convene
> and preside over an evidentiary hearing—i.e., must the five Commissioners hear
> argument, take evidence, rule on objections, and make credibility
> determinations—or will the Division seek that the Commission delegate any
> duties to a hearing officer, administrative law judge, or the equivalent?  What is
> the Division's position on whether the Commission is required to follow the Rules
> of Practice, including any deadlines for the issuance of a decision, or whether
> there are particular Rules with which the Commission need not comply?

41.     The SEC Staff has, however, refused to provide this information to Mr. Hackert,

or even to provide the Enforcement Division's position on these issues, confirming only that the

five Commissioners, the SEC Staff's clients and employers, will do whatever they want to do:

> [Y]ou asked a series of questions about the Division's position on what the
> Commission "must" or "is required" to do during this proceeding.  As indicated in
> our letter of January 29, the Division does not control how the Commission
> presides over this proceeding.

42.     Moreover, even though the OIP lists over 200 Marcum audits the Staff claims were improperly documented, the SEC Staff has refused to produce to Mr. Hackert any discovery relating to SEC investigations that may involve these other audits.  Due to the strict limitations on discovery in the Administrative Proceeding, Mr. Hackert is unlikely to be able to obtain this discovery absent the SEC Staff's consent or Commission order.

43.     During the abbreviated time period prior to the commencement of the evidentiary hearing, Mr. Hackert will be required to process and review the 171,755 documents (1.06 million pages) produced so far by the SEC Staff, notice and complete his own albeit limited fact discovery, engage and prepare an expert witness, consider and potentially file one or more dispositive motions, and prepare for trial.

44.     Citing the pendency of *Jarkesy* before the Supreme Court and the anticipated decision in that case this spring, the SEC has voluntarily stayed several pending administrative proceedings involving accountants like Mr. Hackert.  *See, e.g., In re Alan J. Markowitz, CPA*, Admin Proc. File No. 3-21314; *In re Joshua Abrahams*, Admin. Proc. File No. 3-21214.  The SEC Staff, however, has informed Mr. Hackert that they will not voluntarily stay his Administrative Proceeding pending a decision in *Jarkesy*.  They have declined to offer any explanation for Mr. Hackert's disparate treatment.

## INJUNCTIVE RELIEF

45.     In order to obtain a permanent injunction, a plaintiff must demonstrate that:  (i) he or she will suffer an irreparable injury, absent the injunction; (ii) remedies available at law are inadequate to compensate for that injury; (iii) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (iv) the public interest would not be disserved by a permanent injunction.  *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 322 (2d Cir.

2022) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Mr. Hackert satisfies the requirements for injunctive relief.

46. Absent injunctive relief, Mr. Hackert would be subjected to an unconstitutional proceeding, and he would suffer irreparable harm unless the Administrative Proceeding is enjoined. That injury cannot be remedied with after-the-fact money or other damages since it is an irreversible and non-compensable "here-and-now" injury. *See Axon,* 598 U.S. at 191.

47. The harm to Mr. Hackert from being subjected to an unconstitutional proceeding far outweighs the harm, if any, the SEC would otherwise face, as the SEC regularly initiates and litigates actions in federal district courts.

48. The grant of an injunction in this case will not disserve public interest. In fact, it would serve the public interest by protecting and preserving constitutional rights.

### COUNT I
**(Due Process)**

49. The Administrative Proceeding violates Mr. Hackert's Fifth Amendment right to due process.

50. SEC enforcement actions are not like civil actions between private parties but instead, "quasi criminal proceedings" where sanctions may be imposed that "look[] like criminal penalties." *See* Transcript of Oral Argument at 34, *Gabelli v. SEC*, 568 U.S. 442 (2013) (No. 11-1274) (Breyer, J.). Indeed, an express purpose of the Administrative Proceeding here is to determine whether to deny Mr. Hackert—temporarily or permanently—the privilege of appearing or practicing before the Commission, which has been recognized as "the securities industry equivalent of capital punishment." *Saad v. SEC*, 718 F.3d 904, 906 (D.C. Cir. 2013).

51.     Notwithstanding the severity of the potential outcome, the SEC has declined to provide Mr. Hackert with information regarding the most basic details of the Administrative Proceeding:  before whom will the proceeding occur and what rules, if any, will apply.

52.     Even the remedies at stake in the proceeding are unsettled.  While the OIP does not include a request for a monetary penalty, the SEC Staff has made it clear that they may nevertheless seek one if they deem it "appropriate."  The SEC Staff has provided no explanation for their equivocation, and no sense for the timing and bases, if any, for their decision in this regard.

53.     As with all SEC administrative proceedings, the agency also impermissibly serves as investigator, prosecutor, and judge.  Again, all such cases are preapproved by the five-member Commission, investigated and prosecuted by employees of the Commission, adjudicated by employees of the Commission, and appealed to the Commission.  The Commission alone decides when it will issue a final appealable order, and years of delay are the norm for the agency.

54.     "[T]he law is clear that, in adjudicative administrative proceedings, due process 'includes the right to know what evidence is being used against one.'"  *Royal Brush Mfg. v. United States*, 75 F.4th 1250, 1258 (Fed. Cir. 2023) (quoting *Robbins v. U.S. R.R. Ret. Bd.*, 594 F.2d 448, 452 (5th Cir. 1979)).  But here, the SEC Staff has refused to produce to Mr. Hackert all of the investigative files relating to the OIP's allegations.

55.     Mr. Hackert's ability to obtain discovery from sources other than the SEC Staff is also significantly restricted compared to the discovery allowed in federal court.  Were the SEC to bring this proceeding in federal district court, Mr. Hackert would not be limited to three depositions, and the SEC would be required to respond to his requests for relevant documents.

The SEC would also be required to respond to written discovery, such as requests for admissions and interrogatories, permitting Mr. Hackert to "know what evidence is being used against [him]."

56.     Accordingly, Mr. Hackert seeks a declaratory judgment that the Administrative Proceeding violates his due process rights under the Fifth Amendment.

57.     Mr. Hackert also seeks an injunction enjoining the Administrative Proceeding.

## COUNT II
### (Seventh Amendment)

58.     Mr. Hackert repeats and realleges every allegation contained in the preceding paragraphs as if fully set forth herein.

59.     The Administrative Proceeding violates Mr. Hackert's Seventh Amendment right to a jury trial.

60.     In deciding whether a particular action is a suit "at common law" that triggers the Seventh Amendment right to a jury trial, courts in this Circuit must ask:  (i) "'whether the action would have been deemed legal or equitable in 18th century England;'" and (ii) more importantly, whether the "'remedy sought … is legal or equitable in nature.'"  *Pereira v. Farace*, 413 F.3d 330, 337 (2d Cir. 2005) (quoting *Germain v. Connecticut Nat'l Bank*, 988 F.2d 1323, 1328 (2d Cir.1993)).

61.     The central claim in the Administrative Proceeding against Mr. Hackert is a negligence claim, alleging (falsely) that Mr. Hackert acted "negligently, unreasonably, and without due professional care" in connection with the audits identified in the OIP.  OIP ¶ 10. Negligence claims are akin to traditional actions at law to which the right to a jury trial attaches.

62.     The SEC Staff has also made it clear that they may seek to impose on Mr. Hackert the payment of a civil money penalty pursuant to Section 21B(a) of the Exchange Act [15 U.S.C. § 78u-2(a)].   A civil money penalty is a type of "legal" remedy, and the Seventh Amendment

right to a jury trial attaches to suits brought under a statute seeking such penalties.  *See Tull v. United States*, 481 U.S. 412, 417 (1987); *Jarkesy*, 34 F.4th at 454-55.

63.     Accordingly, Mr. Hackert seeks a declaratory judgment that the Administrative Proceeding violates his Seventh Amendment right to a jury trial.

64.     Mr. Hackert also seeks an injunction enjoining the Administrative Proceeding.

## COUNT III
### (Article II of the U.S. Constitution)

65.     Mr. Hackert repeats and realleges every allegation contained in the preceding paragraphs as if fully set forth herein.

66.     Though no ALJ has been assigned in this case, when the Commission brings enforcement actions as administrative proceedings, "it typically delegates the initial adjudication to an ALJ" who is given "authority, much like a regular trial judge, to resolve motions, hold a hearing, and then issue a decision."  *Axon*, 598 U.S. at 181.

67.     SEC ALJs are officers of the Commission.  They report to the Commission and act under authority delegated by the Commission—not the President of the United States.  *See* 15 U.S.C. § 78d-1(a); 17 C.F.R. § 200.30-10.  However, Article II of the U.S. Constitution vests the Executive Power of the United States in the President, and the President must "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 3.  In order to "take Care that the Laws be faithfully executed," the President must have the power to keep executive officers accountable, including by removal from office.  *See, e.g.*, *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 483 (2010) (citing *Myers v. United States*, 272 U.S. 52 (1926)); *Jarkesy*, 34 F.4th at 463-65 ("SEC ALJs are sufficiently insulated from removal that the President cannot take care that the laws are faithfully executed.").

68.     Because ALJs are insulated from removal by the President, given their status as officers of the Commission, their status deprives the President of his Executive Powers and, therefore, violates Article II of the U.S. Constitution.

69.     Mr. Hackert therefore seeks a declaratory judgment that any involvement in the Administrative Proceeding by an ALJ would be unconstitutional.

70.     Mr. Hackert also seeks an injunction enjoining the Commission from assigning an ALJ to preside over the Administrative Proceeding, since it would irreparably harm Mr. Hackert by subjecting him to an unconstitutional proceeding led by a hearing officer that is improperly insulated from the President's Executive Powers.

## RELIEF REQUESTED

WHEREFORE, Mr. Hackert prays that the Court award judgment in his favor on each of his causes of action, and:

a.      Enter a judgment pursuant to 28 U.S.C. § 2201 declaring that:  (i) the Administrative Proceeding violates Mr. Hackert's rights to due process under the Fifth Amendment; (ii) the Administrative Proceeding violates Mr. Hackert's Seventh Amendment right to a jury trial; (iii) the assignment of the Administrative Proceeding to, and its conduct by, an Administrative Law Judge is unconstitutional;

b.      Enjoin the Administrative Proceeding;

c.      Enjoin the Commission from assigning an Administrative Law Judge to the Administrative Proceeding;

d.      Award Mr. Hackert his costs and attorneys' fees in connection with this proceeding; and

e.      Grant Mr. Hackert such other and further relief as the Court deems just, proper,

and equitable under the circumstances.

Dated:      New York, New York
            February 27, 2024

                              DEBEVOISE & PLIMPTON LLP

                              By: */s/ Andrew J. Ceresney*
                              Andrew J. Ceresney, Esq.
                              66 Hudson Boulevard
                              New York, NY 10001
                              (212) 909-6000
                              aceresney@debevoise.com


                              Arian M. June, Esq.*
                              Stephan J. Schlegelmilch, Esq.*
                              Mark D. Flinn, Esq.*
                              DEBEVOISE & PLIMPTON LLP
                              801 Pennsylvania Avenue, N.W.
                              Washington, DC 20004
                              (202) 383-8000
                              ajune@debevoise.com
                              sjschlegelmilch@debevoise.com
                              mflinn@debevoise.com

                              *Counsel for Plaintiff Edward F. Hackert*

                              * Motions for admission *pro hac vice* forthcoming