Andrew J. Ceresney, Esq.
Arian M. June, Esq.*
Stephan J. Schlegelmilch, Esq.*
Mark D. Flinn, Esq.*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **EDWARD F. HACKERT,** | |
| **Plaintiff,** | |
| **vs.** | **Case No. 1:24-CV-01477 (NRB)** |
| **U.S. SECURITIES AND EXCHANGE COMMISSION,** | |
| **Defendant.** | |

## AMENDED COMPLAINT

Plaintiff Edward F. Hackert, for his amended complaint against Defendant U.S.

Securities and Exchange Commission (the "SEC" or "Commission"), alleges as follows:

### INTRODUCTION

1.        Mr. Hackert is a Certified Public Accountant ("CPA"), licensed to practice in

New York.  Through its issuance of an Order Instituting Administrative and Cease-and-Desist

Proceedings Pursuant to Section 8A of the Securities Act of 1933, Sections 4C and 21C of the

Securities Exchange Act of 1934, and Rule 102(e) of the Commission's Rules of Practice, and

Notice of Hearing, dated January 18, 2024 (the "OIP"), the SEC has instituted an administrative

proceeding against Mr. Hackert (the "Administrative Proceeding").  The OIP alleges that

Mr. Hackert caused his employer, Marcum LLP ("Marcum"), to violate Rule 2-02(b)(1) of

Regulation S-X through his supposed noncompliance with various Public Company Accounting Oversight Board ("PCAOB") auditing standards between 2012 and 2022, and that such noncompliance also constituted "improper professional conduct" within the meaning of SEC Rule of Practice 102(e)(1)(ii).

2.      This action seeks declaratory and injunctive relief to prevent the SEC from violating Mr. Hackert's constitutional rights by subjecting him to an unconstitutional Administrative Proceeding.

3.      Specifically, Mr. Hackert seeks a declaration that:

        a.      The Administrative Proceeding deprives Mr. Hackert of his right to due process under the Fifth Amendment;

        b.      The Administrative Proceeding violates Mr. Hackert's Seventh Amendment right to a jury trial; and

        c.      The assignment of the Administrative Proceeding to, and its conduct by, an Administrative Law Judge whose removal is insulated from control by the president would violate Article II of the Constitution.

4.      Mr. Hackert also seeks injunctive relief enjoining the SEC from proceeding with this unconstitutional Administrative Proceeding, including an order enjoining the appointment of an Administrative Law Judge to preside over the proceeding.

## **PARTIES**

5.      Mr. Hackert is a well-respected accountant and partner in the Assurance Services division of Marcum.  He practices out of Marcum's New York City office, and he resides in East Meadow, New York.

6.      The SEC is an independent agency of the United States, headquartered in Washington, D.C., with a regional office in New York City.

## JURISDICTION AND VENUE

7.      This action challenges the constitutionality of the Administrative Proceeding brought by the SEC against Mr. Hackert.  Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which provides that federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

8.      Mr. Hackert's claims are not precluded by any other statute.  This Court may consider claims, like those advanced by Mr. Hackert here, "that the structure, or even existence, of an agency violates the Constitution," and the "ordinary statutory review scheme does not preclude a district court from entertaining these extraordinary claims."  *See Axon Enter., Inc. v. FTC*, 598 U.S. 175, 180, 195 (2023).

9.      The Court has personal jurisdiction over the SEC, which has a regional office in this district.

10.      Mr. Hackert works in Marcum's New York City office, and much of the conduct at issue in the OIP occurred within this district, so venue is proper pursuant to 28 U.S.C. § 1391(b), (c), and (e).

## FACTS

11.      Mr. Hackert has over 38 years of experience in the field of public accounting, including work for several large accounting firms (*e.g.*, the firms now known as PricewaterhouseCoopers LLP, Deloitte, and Grant Thornton LLP).  In 2006, he was promoted to his current position as a partner in Marcum's audit practice.

12.     Since joining Marcum, Mr. Hackert has been a critical resource for the firm and its clients on technical accounting issues, and until the SEC initiated the Administrative Proceeding against him, Mr. Hackert had an entirely unblemished professional career.  In his multi-decade career, he has never before been accused of professional misconduct, nor has he been subject to professional discipline by the SEC, the PCAOB, the American Institute of Certified Public Accountants ("AICPA"), any state accountancy board, or any other regulatory or professional body.

A.      **The OIP**

13.     Even though the constitutionality of SEC administrative proceedings would soon be clarified by the Supreme Court's June 27, 2024 decision in *SEC v. Jarkesy*,[1] on January 18, 2024, the SEC initiated the Administrative Proceeding against Mr. Hackert by filing the OIP.

14.     The January 18, 2024 OIP alleged that between 2012 and 2022, Mr. Hackert failed to properly supervise numerous audit engagements to ensure that the audits were performed in compliance with PCAOB auditing standards, including by failing to review the work of the engagement team, appropriately document his review, and assemble complete and final audit documentation by the relevant deadline.  Based on the foregoing, the OIP alleges that Mr. Hackert caused Marcum to violate Rule 2-02(b)(1) of Regulation S-X, since Marcum's audit reports stated that the audits had been performed in accordance with PCAOB auditing standards, and that, as a result, Mr. Hackert "acted negligently, unreasonably, and without due professional care," which constituted "improper professional conduct" within the meaning of Section

---

[1]     The Supreme Court granted the SEC's petition for a writ of certiorari on June 30, 2023, and argument was held on November 29, 2023.

4C(a)(2) of the Exchange Act and SEC Rule of Practice 102(e)(1)(ii). *In re Hackert*, SEC Release No. 4483, 2024 WL 212152, ¶ 10 (Jan. 18, 2024).

15.    The OIP's allegations are entirely unprecedented.  Other than second-guessing a single real-time accounting judgment relating to the classification of certain income during the audit of one issuer, which resulted in reclassification of changes in the fair value of warrants from "other comprehensive income" to "net income," the OIP does not cite a single audit failure, false financial statement, harmed investor, or impeded regulator.

16.    The OIP does not allege any ongoing violations; the last supposed act of "improper professional conduct" alleged in the complaint occurred in March 2022, more than two years ago. *See id.* at ¶ 4.

17.    The SEC has never litigated (and never settled) a case against an individual auditor solely for documentation-related issues as minor and unsubstantiated as those the SEC has alleged in the OIP.  And a review of the SEC's and PCAOB's settled orders involving violations of the same PCAOB rules cited in the OIP shows significant differences between the conduct discussed therein and the allegations concerning Mr. Hackert.  The settled orders describe audit documentation violations that involve intentionally backdating work papers to conceal the timing of delinquent audit procedures,[2] blank work papers that were signed off and placed in audit files,[3] additions and alterations made to incomplete audit files *years* beyond documentation completion dates in order to mislead PCAOB investigators,[4] forged signatures,

---

[2] *See In re Richard J. Bertuglia, et al.*, Exchange Act Release No. 84419 at ¶¶ 2, 3 (Oct. 12, 2018).
[3] *See In re KPMG India, et al.*, PCAOB Order 105-2022-033 at ¶¶ 5, 19–30 (Dec. 6, 2022).
[4] *See In re PLS, CPA, et al.*, Exchange Act Release No. 92361 at ¶¶ 46–48 (July 9, 2021).

and fake work papers created to document testing never performed.[5]  The supervision violations highlighted in the SEC's settled orders similarly involved oversight of backdated and falsified documents[6] or engagement quality reviewers who lacked objectivity from the underlying engagement teams.[7]  None of this sort of misconduct is alleged here.

18.     To make matters worse, the OIP contends that hundreds of Mr. Hackert's audits spanning a decade had deficient documentation that failed to demonstrate that Mr. Hackert appropriately supervised the work of his audit teams, but the SEC Staff has never bothered to collect (let alone examine) the audit work papers for all but a handful of these engagements.  The OIP also misinterprets the relevant PCAOB standards, overlooking the express terms of the standards and applying incorrect interpretations to find non-existent violations.

19.     For example, the Commission's case largely hinges on its contention that the PCAOB standard for audit documentation—AS 1215—required Mr. Hackert to document his review of audit workpapers *prior* to the audit report release date.  But the Commission is wrong, and obviously so; the language of AS 1215 during the relevant time period did not require Mr. Hackert to *document* his review of audit workpapers prior to the audit report release date.  Rather, the standard required only that the engagement team *complete "all necessary auditing procedures* and *obtain[] sufficient evidence* to support the representations in the auditor's report" prior to the report release date.  AS 1215.15 (emphasis added).  Consistent with this requirement, Mr. Hackert did in fact complete his review and supervision procedures prior to the audit report release date.  And with respect to the documentation of Mr. Hackert's review and supervision, it was not "improper professional conduct" for Mr. Hackert to *document* his procedures after the

---

[5] *See In re Jin Tae Kim*, PCAOB Order 105-2022-013 at ¶¶ 13–19, 23 (Aug. 16, 2022).
[6] *See In re Peter Messineo, et al.*, Exchange Act Release No. 76607 at 7 (Dec. 10, 2015).
[7] *See In re AWC, et al.*, PCAOB Order 105-2016-016 at ¶ 11 (May 18, 2016).

report release date.  The standard explicitly allowed auditors, like Mr. Hackert, to assemble audit

documentation within 45 calendar days *after* the report release date.  *Id.*

20.    In fact, less than two months ago, the PCAOB tacitly acknowledged Mr.

Hackert's reading of the then-extant version of AS 1215 when revising the standard to include a

new subsection that now requires "the engagement partner and other engagement team members

performing supervisory activities [to] have completed their reviews of audit documentation"

prior to the report release date.[8]  This post-OIP rulemaking confirms that Mr. Hackert's

interpretation of and compliance with the prior standard was not only reasonable, but also

entirely correct.

21.    Far from providing Mr. Hackert with "the factual and legal basis alleged therefor

in such detail as will permit a specific response thereto," SEC Rule of Practice 200(b)(3), the

Commission simply appended to the OIP two lists of 210 audits the agency claims were each

somehow deficient, with no explanation of why or how this is so for each audit.  *See In re*

*Hackert*, SEC Release No. 4483, 2024 WL 212152 at Appx. A, Appx. B.

22.    As far as remedies are concerned, the OIP seeks an order from the Commission

imposing injunctive relief—specifically, requiring Mr. Hackert to "cease and desist from

committing or causing violations of" Rule 2-02(b)(1) of Regulation S-X—and barring him from

appearing or practicing before the SEC as an accountant.  *Id.* at *13.

23.    Because there is no "victim" of Mr. Hackert's supposed professional negligence

(indeed, not a single audit failure or false filing is alleged) and no allegations of ongoing

misconduct, the practice bar the SEC seeks is entirely punitive and does nothing to "restore the

---

[8] *See* PCAOB Release No. 2024-004 at A2-6-7, https://assets.pcaobus.org/pcaob-dev/docs/default-source/rulemaking/docket-049/2024-004-as1000.pdf.

status quo." *SEC v. Jarkesy*, 603 U.S. ___, 144 S. Ct. 2117, 2129 (2024) (citing *Tull v. United States*, 481 U.S. 412, 422 (1987)).  The bar is "a form of punishment imposed by the government for unlawful or proscribed conduct, which goes beyond remedying the damage caused to the harmed parties by the defendant's action." *Johnson v. SEC*, 87 F.3d 484, 488 (D.C. Cir. 1996); *see also Jarkesy*, 144 S. Ct., at 2129 ("a civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained by also serving either retributive or deterrent purposes, is punishment") (quoting *Austin v. United States*, 509 U.S. 602, 610 (1993)) (emphasis added).

24.    While the OIP does not specifically seek a monetary penalty from Mr. Hackert, on January 29, 2024, the SEC Staff informed Mr. Hackert by letter that they will nevertheless ask the Commission to impose a monetary penalty if they deem it "appropriate."  And, on April 26, 2024, when temporarily staying the Administrative Proceeding until after the Supreme Court had issued its opinion in *Jarkesy*, the Commission specifically noted that the Administrative Proceeding "was instituted under Section 8A of the Securities Act, which authorizes the Commission to impose civil penalties upon a finding that such relief is appropriate in the public interest."  *In re Hackert*, SEC Release No. 4499, 2024 WL 1832340, *1 (Apr. 26, 2024).  Civil penalties "are designed to punish and deter, not to compensate.  They are, therefore, 'a type of remedy at common law that could only be enforced in courts of law.'"  *Jarkesy*, 144 S. Ct., at 2129 (citation omitted).

25.    Soon after filing, the SEC Staff conceded that the OIP they filed had numerous "inadvertent errors," and on February 5, 2024, the SEC Staff moved to file an amended OIP.  According to the SEC Staff's motion, "[a]fter the OIP was filed, on January 23, 2024, Division staff discovered errors in how the number of late sign-offs by [Mr.] Hackert, which occurred

after the report release date, was calculated for certain audits described in the OIP." The SEC Staff has declined to share with Mr. Hackert any detailed information regarding the errors.

26.     On March 12, 2024, the Commission issued an Amended OIP (the "AOIP"). *See In re Hackert*, SEC Release No. 4492, 2024 WL 1091204 (Mar. 12, 2024). The lists of audits appended to the AOIP now identified 193 audits, 17 fewer than were listed in the OIP, but the new lists provide no additional information regarding the specifics of the Commission's contention that Mr. Hackert's conduct was deficient with respect to each identified audit.

27.     On April 1, 2024, Mr. Hackert filed an Answer wherein he denied the allegations in the AOIP. The SEC Staff now contends that the denials in Mr. Hackert's Answer bar him from seeking additional specificity regarding the allegations in the AOIP. According to the SEC Staff, they have no obligation to provide him, prior to the evidentiary hearing, with information regarding what they contend he did or did not do wrong with respect to *each* of the hundreds of audits listed in the multi-page appendices attached to the AOIP. As discussed below, the SEC Rules of Practice forbid Mr. Hackert from serving the sort of written discovery—*e.g.,* interrogatories and requests for admission—that would, had the Commission filed its case in district court, otherwise require the SEC Staff to provide Mr. Hackert sufficient advance notice of each supposed violation.

**B.     Administrative Proceedings Generally**

28.     The SEC is an independent agency that may bring enforcement actions in either federal district court or through in-house administrative proceedings. *See* 15 U.S.C. §§ 78d-1(a), 78u(d), 78u-1, 78u-2, and 78u-3.

29.     The SEC employs Administrative Law Judges or "ALJs" who are, typically, assigned to preside over administrative proceedings. As the Supreme Court observed in *Axon*,

when the Commission brings an enforcement action as an administrative proceeding, "it typically delegates the initial adjudication to an ALJ" with authority "to resolve motions, hold a hearing, and then issue a decision."  598 U.S. at 181 (citing 16 C.F.R. §§ 3.21–3.56 (2021); 17 C.F.R. §§ 201.221–201.360 (2021)).  In short, an ALJ assigned to hear an SEC enforcement action has authority "much like a regular trial judge."  *Id*.

30.    The Supreme Court has previously held that SEC ALJs had been appointed to their positions in violation of Article II of the Constitution, which vests the executive power of the United States in the president.  *See Lucia v. SEC*, 585 U.S. 237, 251-52 (2018).  Unanswered by the *Lucia* decision was whether ALJs' insulation from removal also amounted to a constitutional violation.  *See id.* at n.1 (declining to address removal).  The United States Court of Appeals for the Fifth Circuit has held that "the statutory removal restrictions for SEC ALJs are unconstitutional," *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), but the Supreme Court again declined to address that issue in its June 27, 2024 opinion in *Jarkesy*.  *See* 144 S. Ct. at 2139 (declining to address removal).

31.    Notwithstanding the stakes at issue in administrative proceedings given the remedies ALJs and the Commission can impose, respondents in such proceedings "los[e] many of the procedural protections our courts supply in cases where a person's life, liberty, or property is at stake."  *Jarkesy*, 144 S. Ct. at 2141 (Gorsuch, J. concurring).  Respondents are denied an independent judge, their Seventh Amendment right to a jury trial, and the protections afforded by the Federal Rules of Civil Procedure and the Federal Rules of Evidence, most notably the former's limitation of "trial by ambush" and the latter's prohibition on hearsay evidence.  *Id.*

32.    Respondents' ability to investigate and defend their cases through discovery is also significantly curtailed in SEC administrative proceedings.  Even though the SEC Staff is

given years to issue subpoenas, compel sworn testimony, review documents, line up expert witnesses, and otherwise assemble its case before filing an enforcement action, the respondent in an administrative proceeding "enjoys no general right to discovery." *Id*. Respondents are limited to three depositions (plus another two upon request, but only if the ALJ agrees), cannot serve written discovery, are required to ask permission to serve subpoenas, and must proceed to "trial" within 10 months of the OIP's filing, regardless of the case's complexity or the Commission's allegations. *Id.* (citing §§ 201.233(a), 201.360(a)(2)(ii)).

33.     Perhaps unsurprisingly, the SEC has an outsized success rate in administrative proceedings when compared to federal district court. Over a five-year period from 2010 to 2015, the SEC won 90% of contested administrative proceedings, compared to a 69% success rate in contested cases brought in federal court. *See Axon*, 598 U.S. at 215–16 (Gorsuch, J. concurring). And, reportedly, an SEC ALJ "even warned individuals during settlement discussions that he had found defendants liable in every contested case and never once 'ruled against the agency's enforcement division.'" *Id*. at 213–14.

34.     Following the evidentiary hearing, the ALJ must issue an "initial decision," which a respondent may appeal to the five-member Commission. Accordingly, "[a]gencies like the SEC . . . combine the functions of investigator, prosecutor, and judge under one roof." *Id.*; *see also Jarkesy*, 144 S. Ct. at 2139. The cases are preapproved by the five-member Commission, investigated and prosecuted by employees of the Commission, adjudicated by employees of the Commission, and appealed to the Commission.

35.     Only after the Commission enters a final order can respondents appeal to a federal court, but the circuit courts hearing such appeals are constrained to treat Commission findings as

"conclusive" if supported by "substantial evidence," even if that evidence could not have been admitted in federal court.  *See Jarksey*, 144 S. Ct. at 2139; 15 U.S.C. § 78y(a)(1) and (4)).

36.    The SEC's combination of prosecutorial and adjudicative functions has a history of problems.  For example, on June 2, 2023, the SEC disclosed a "control deficiency" related to the separation of enforcement and adjudicatory functions within the agency.  The deficiency allowed "in a number of adjudicatory matters, administrative support staff from Enforcement responsible for maintaining Enforcement's case files access[ to] Adjudication memoranda via [the Office of the Secretary]'s databases.  In many instances, those administrative staff also emailed Adjudication memoranda to other administrative staff for potential upload to Enforcement databases; once uploaded, the memoranda became accessible more broadly to Enforcement staff."  *Second Commission Statement Relating to Certain Administrative Adjudications*, SEC. AND EXCH. COMM'N, (June 2, 2023).[9]

37.    In addition to being rife with potential "control deficiencies," SEC administrative proceedings are also notoriously slow, despite their streamlined nature being one of the purported benefits of such a proceeding.  It is not unusual for respondents' cases to languish for years pending the issuance of appealable Commission orders.  Indeed, in *Axon*, the Supreme Court noted that the underlying SEC administrative proceeding "dragged on for seven years." 598 U.S. at 216 (Gorsuch, J. concurring).

---

[9] https://www.sec.gov/news/statement/second-commission-statement-relating-certain-administrative-adjudications#.  *See also Jarksey*, 144 S. Ct. at 2142 ("None of this likely came as a surprise to the SEC employees in the Division of Enforcement responsible for pressing the action against Mr. Jarkesy.  While his appeal was pending, employees in that division— including an "'Enforcement Supervisor'" in the regional office prosecuting Mr. Jarkesy— accessed confidential memos by the Commissioners' advisors about his appeal.") (Gorsuch, J., concurring).

38.     *Axon* was not a one-off in this regard.  In *Jarkesy*, it took the Commission "the better part of six years" to issue an opinion that could be appealed to a federal court.  *Jarkesy*, 144 S. Ct. at 2142 (Gorsuch, J. concurring).  Mr. Stewart had to wait more than three years for a ruling on his dispositive motion in *In re Sean R. Stewart*, Admin. Proc. File No. 3-19951.  The SEC Staff's dispositive motion has also been pending for more than three years in *In re Mohammed Ali Rashid*, Admin. Proc. File No. 3-20139.  Two requests for Commission review of FINRA disciplinary rulings have each been pending for almost three and a half years.  *See In re Eric S. Smith*, Admin. Proc. File No. 3-20127; *In re Jennifer Ann Johnson*, Admin. Proc. File No. 3-20120.  Mr. Aggarwal has had a motion to reconsider pending for more than two years. *See* Respondent's Reply, *In re Sandeep Aggarwal*, Admin. Proc. File No. 3-15672 (Jan. 28, 2022).[10]  And, on February 13, 2024, the Commission finally ruled on Mr. Uppal's motion to vacate his collateral bars, which had been pending since July 2019—*i.e.*, for four and a half years.  *See* Order, *In re Sachin K. Uppal*, Admin. Proc. File No. 3-16706 (Feb. 13, 2024).

39.     The SEC's adjudicative lethargy is inexcusable.  An SEC regulation requires the Commission to issue final, appealable orders within eight months of the conclusion of briefing, *see* 17 C.F.R. § 201.900(a)(1)(iii), but the Commission routinely issues orders exempting itself from this requirement.  For example, the Commission granted itself *seven* consecutive 90-day extensions of the deadline to issue a decision in *In re Mark Feathers*, Admin. Proc. File No. 3-15755, before being forced to drop that case altogether due to the "control deficiencies" discussed above.  Prior to its abandonment, Mr. Feathers' administrative proceeding lasted more than nine years.

---

[10] The SEC order at issue in *Aggarwal* was largely premised on a 2014 criminal case that the Department of Justice dismissed via *nolle prosequi* in 2020.  Nevertheless, Mr. Aggarwal's motion requesting Commission reconsideration languishes.

40.     Absent an action premised, as here, on *Axon*, respondents in SEC administrative hearings are often trapped in limbo for years, unable to appeal to a federal court (with its deferential standard of review) due solely to the Commission's delay.

**C.    Mr. Hackert's Administrative Proceeding**

41.     The AOIP issued by the SEC here differs markedly from the typical OIP discussed above.  Specifically, it provides that the five-member Commission, not an ALJ, will preside over Mr. Hackert's Administrative Proceeding.  *See In re Hackert*, SEC Release No. 4492, 2024 WL 1091204, *15 (Mar. 12, 2024).

42.     On information and belief, the five Commissioners have never before presided over an evidentiary hearing.  Indeed, again on information and belief, not even a smaller subset of the Commission has ever presided over a hearing.

43.     Having the five Commissioners rule on any dispositive motion Mr. Hackert may file and preside over Mr. Hackert's evidentiary hearing eliminates all of the supposed benefits of an administrative proceeding—*i.e.*, a speedy hearing held before an expert fact-finder who is subject to a strict deadline for a decision that is appealable to the Commission, which is also subject to a strict deadline.

44.     Having the five Commissioners preside over the hearing also eliminates one stage of review of Mr. Hackert's case—*i.e.*, the Commission's *de novo* review of the ALJ's initial decision.

45.     The Commission's elimination of an ALJ in Mr. Hackert's Administrative Proceeding is likely an effort to "fix" the constitutional violations relating to the ALJs' removal, a question unresolved by the recent decision in *Jarkesy*, but the agency's attempted cure serves only to create new logistical problems and constitutional violations.  Any proceeding held before

14

the five-member Commission simply cannot occur in a way that protects Mr. Hackert's rights, and such a proceeding would necessarily deny Mr. Hackert due process.

46.     Indeed, given these grave concerns, Mr. Hackert has on several occasions submitted requests to the SEC Staff for an explanation regarding how and by whom the proceeding will actually be conducted and what rules, if any, will apply:

> And finally, your letter seems to misunderstand our [January 24, 2024] questions regarding whether and how the Commission will preside over this matter. Our question was not what the Commission will ultimately do vis-à-vis a hearing in this matter or the other issues we raised. Rather, our question was (and remains): what is the Division's position on these issues? For example, is it the Division's position that the Commission (or any designee) must timely rule on any dispositive motion Mr. Hackert files before a hearing commences? What is the Division's position on whether the five-member Commission must itself convene and preside over an evidentiary hearing—i.e., must the five Commissioners hear argument, take evidence, rule on objections, and make credibility determinations—or will the Division seek that the Commission delegate any duties to a hearing officer, administrative law judge, or the equivalent? What is the Division's position on whether the Commission is required to follow the Rules of Practice, including any deadlines for the issuance of a decision, or whether there are particular Rules with which the Commission need not comply?

47.     The SEC Staff has, however, refused to provide this information to Mr. Hackert, or even to provide the Enforcement Division's position on these issues, confirming only that the five Commissioners, the SEC Staff's clients and employers, will do whatever they want to do:

> [Y]ou asked a series of questions about the Division's position on what the Commission "must" or "is required" to do during this proceeding. As indicated in our letter of January 29, the Division does not control how the Commission presides over this proceeding.

48.     Counsel for the Commission in this litigation has confirmed to the Court that there is presently no procedure governing the Commission's handling of the Administrative Proceeding.

49.     Moreover, even though the AOIP lists 193 audits the SEC Staff claims were improperly documented, they have refused to produce to Mr. Hackert any discovery relating to

any SEC investigations that may involve these other audits.  And, the SEC Staff has informed

Mr. Hackert that they have no obligation to provide him with additional information, in advance

of the evidentiary hearing, regarding how or why they contend that each of these 193 audits were

somehow violative of the PCAOB standards.  Due to the strict limitations on discovery in the

Administrative Proceeding, Mr. Hackert will not be able to obtain this discovery absent the SEC

Staff's consent or Commission order.

50.    Indeed, the SEC Staff contends that because Mr. Hackert denied the allegations in

the AOIP and they have produced over one million pages of records, he is entitled to no

additional information regarding the specific allegations against him.

51.    During the abbreviated time period prior to the commencement of the evidentiary

hearing, Mr. Hackert will be required to process and review the 1.06 million pages of records

produced so far by the SEC Staff, notice and complete his own albeit limited fact discovery,

engage and prepare an expert witness, consider and potentially file one or more dispositive

motions, and prepare for trial.

**INJUNCTIVE RELIEF**

52.    In order to obtain a permanent injunction, a plaintiff must demonstrate that:  (i) he

or she will suffer an irreparable injury, absent the injunction; (ii) remedies available at law are

inadequate to compensate for that injury; (iii) considering the balance of hardships between the

plaintiff and defendant, a remedy in equity is warranted; and (iv) the public interest would not be

disserved by a permanent injunction.  *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 322 (2d Cir.

2022) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).  Mr. Hackert

satisfies the requirements for injunctive relief.

53.     Absent injunctive relief, Mr. Hackert would be subjected to an unconstitutional proceeding, and he would suffer irreparable harm unless the Administrative Proceeding is enjoined.  That injury cannot be remedied with after-the-fact money or other damages since it is an irreversible and non-compensable "here-and-now" injury.  *See Axon*, 598 U.S. at 191 (citing *Seila Law LLC v. CFPB*, 591 U.S. 197, 212 (2020)).

54.     The harm to Mr. Hackert from being subjected to an unconstitutional proceeding far outweighs the harm, if any, the SEC would otherwise face, as the SEC regularly initiates and litigates actions in federal district courts.

55.     The grant of an injunction in this case will not disserve public interest.  In fact, it would serve the public interest by protecting and preserving constitutional rights.

### COUNT I
### (Due Process)

56.     The Administrative Proceeding violates Mr. Hackert's Fifth Amendment right to due process.

57.     SEC enforcement actions are not like civil actions between private parties but instead, "quasi criminal proceedings" where sanctions may be imposed that "look[] like criminal penalties."  *See* Transcript of Oral Argument at 34, *Gabelli v. SEC*, 568 U.S. 442 (2013) (No. 11-1274) (Breyer, J.).  Indeed, an express purpose of the Administrative Proceeding here is to determine whether to deny Mr. Hackert—temporarily or permanently—the privilege of appearing or practicing before the Commission, which has been recognized as "the securities industry equivalent of capital punishment."  *Saad v. SEC*, 718 F.3d 904, 906 (D.C. Cir. 2013).

58.     "'[D]ue process of law' generally implie[s] and include[s] . . . *judex* [a judge], regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceedings."  *Jarkesy*, 144 S. Ct. at 2145 (quoting *Murray's Lessee v. Hoboken Land &*

*Improvement Co.*, 18 How. 272, 280 (1856)) (Gorsuch, J., concurring).  But here, the SEC has

declined to provide Mr. Hackert with information regarding the most basic details of the

Administrative Proceeding:  before whom the proceeding will occur and what rules, if any, will

apply.  No "settled course of judicial proceedings" exists for the entirely bespoke proceeding the

Commission appears to have ordered here.

59.     Even the remedies at stake in the proceeding are unsettled.  While the AOIP does

not include a request for a monetary penalty, the SEC Staff has made it clear that they may

nevertheless seek one if they deem it "appropriate."  And the Commission itself noted that the

Administrative Proceeding "was instituted under Section 8A of the Securities Act, which

authorizes the Commission to impose civil penalties upon a finding that such relief is appropriate

in the public interest."  *In re Hackert*, SEC Release No. 4499, 2024 WL 1832340 at *1.

60.     As with all SEC administrative proceedings, the agency also impermissibly serves

as investigator, prosecutor, and judge.  Again, all such cases are preapproved by the five-member

Commission, investigated and prosecuted by employees of the Commission, adjudicated by

employees of the Commission, and appealed to the Commission in the first instance.  The

Commission alone decides when it will issue a final appealable order, and years of delay are the

norm for the agency.

61.     "[T]he law is clear that, in adjudicative administrative proceedings, due process

'includes the right to know what evidence is being used against one.'"  *Royal Brush Mfg. v.

United States*, 75 F.4th 1250, 1258 (Fed. Cir. 2023) (quoting *Robbins v. U.S. R.R. Ret. Bd.*, 594

F.2d 448, 452 (5th Cir. 1979)).  But here, the SEC Staff has refused to produce to Mr. Hackert all

of the investigative files relating to the AOIP's allegations, and the vast majority of the

Commission's allegations comprise nothing more than lists of 193 audits the Commission

claims, without any specificity whatsoever, Mr. Hackert somehow failed to supervise and document appropriately.

62.     Mr. Hackert's ability to obtain discovery from sources other than the SEC Staff is also significantly restricted compared to the discovery allowed in federal court.  Were the SEC to bring this proceeding in federal district court, Mr. Hackert would not be limited to three depositions, and the SEC would be required to respond to his requests for relevant documents. The SEC would also be required to respond to written discovery, such as requests for admissions and interrogatories, permitting Mr. Hackert to "know what evidence is being used against [him]."

63.     Accordingly, Mr. Hackert seeks a declaratory judgment that the Administrative Proceeding violates his due process rights under the Fifth Amendment.

64.     Mr. Hackert also seeks an injunction enjoining the Administrative Proceeding.

## COUNT II
### (Seventh Amendment)

65.     Mr. Hackert repeats and realleges every allegation contained in the preceding paragraphs as if fully set forth herein.

66.     The Administrative Proceeding violates Mr. Hackert's Seventh Amendment right to a jury trial.

67.     The Seventh Amendment guarantees that in "[s]uits at common law, . . . the right to trial by jury shall be preserved."  And the Seventh Amendment right "is not limited to 'common law forms of action recognized' when the when the Seventh Amendment was ratified." *Jarkesy*, 144 S. Ct. at 2128 (quoting *Curtis v. Loether*, 415 U.S. 189, 193 (1974)).  Rather, "[t]he Amendment . . . 'embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the particular form which they may assume.'"  *Id*. (quoting *Parsons v. Bedford*, 3 Pet.

433, 447 (1830)).  Whether, as here, a claim is a creature of statute is "immaterial to this analysis."  *Id.* (citing *Tull*, 481 U.S. at 414–15, 417–25).

68.    The central, common law claim in the action against Mr. Hackert is negligence, and "[w]hen Congress transplants a common-law term, the old soil comes with it."  *Jarkesy*, 144 S. Ct. at 2131 (quoting *United States v. Hansen*, 599 U.S. 762, 778 (2023)).  Again, the Commission has alleged (falsely and with no specificity) that Mr. Hackert acted "negligently, unreasonably, and without due professional care" in connection with the audits identified in the AOIP.  *In re Hackert*, SEC Release No. 4492, 2024 WL 1091204, *4.

69.    Negligence claims such as these are traditional, common law causes of action that have been tried before a jury for over 250 years,[11] and "[i]f a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory."  *Jarkesy*, 144 S. Ct. at 2132 (citing *Stern v. Marshall*, 564 U.S. 462, 484 (2011)).  If an act of "Congress cannot 'conjure away the Seventh Amendment by mandating that traditional legal claims be . . . taken to an administrative tribunal,'" then certainly the Commission cannot do so through rulemaking.  *Id.* at 2136 (quoting *Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33, 52 (1989)).

70.    Moreover, both the SEC Staff and the Commission itself have made clear that the Commission may ultimately impose on Mr. Hackert the payment of a civil money penalty if they deem it appropriate.  Civil penalties "are designed to punish and deter, not to compensate.  They

---

[11] *See, e.g., Russell v. Palmer*, 2 Wils. K. B. 325, 95 Eng. Rep. 837 (K.B. 1767) (King's Bench entering judgment after a jury found an attorney negligent in representing his client); *Dunlop v. Monroe*, 7 Cranch 242 (1812) (considering appeal of jury verdict in professional negligence action against deputy post-master); *see also* James Oldham, *The Law of Negligence as Reported in The Times, 1785–1820*, 36 L. AND HIST. REV. 383 (2018) (detailing the history of negligence cases tried to a jury in the King's Bench, Common Pleas, and Exchequer courts).

are, therefore, 'a type of remedy at common law that could only be enforced in courts of law,'"

and "a defendant would be entitled to a jury on these claims."  *Id.* at 2130 (citing *Tull*, 481 U.S.

at 422).

71.     The Commission also seeks in the AOIP the imposition of a bar, pursuant to SEC

Rule of Practice 102(e), prohibiting Mr. Hackert from appearing or practicing before the

Commission as an accountant.  While such a remedy may under certain circumstances be

remedial, no such argument could be made here.  The alleged conduct is entirely historical; there

is no victim to compensate; and there is *status quo* to restore.  The bar here is a "penalty," and

obviously so; it is "a form of punishment imposed by the government for unlawful or proscribed

conduct, which goes beyond remedying the damage caused to the harmed parties by the

defendant's action."  *Johnson*, 87 F.3d at 488; *see also Jarkesy*, 144 S. Ct. at 2129 ("a civil

sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be

explained by also serving either retributive or deterrent purposes, is punishment") (quoting

*Austin v. United States*, 509 U.S. 602, 610 (1993)).  Because the practice bar here is a form of

punishment, Mr. Hackert has a Seventh Amendment right to have the SEC's claims decided by a

jury.

72.     Accordingly, Mr. Hackert seeks a declaratory judgment that the Administrative

Proceeding violates his Seventh Amendment right to a jury trial.

73.     Mr. Hackert also seeks an injunction enjoining the Administrative Proceeding.

## COUNT III
**(Article II of the U.S. Constitution)**

74.    Mr. Hackert repeats and realleges every allegation contained in the preceding paragraphs as if fully set forth herein.

75.    Though no ALJ has been assigned in this case, when the Commission brings enforcement actions as administrative proceedings, "it typically delegates the initial adjudication to an ALJ" who is given "authority, much like a regular trial judge, to resolve motions, hold a hearing, and then issue a decision." *Axon*, 598 U.S. at 181.

76.    SEC ALJs are officers of the Commission.  They report to the Commission and act under authority delegated by the Commission—not the president of the United States.  *See* 15 U.S.C. § 78d-1(a); 17 C.F.R. § 200.30-10.  However, Article II of the U.S. Constitution vests the executive power of the United States in the president, and the president must "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 3.

77.    In order to "take Care that the Laws be faithfully executed," the president must have the power to keep executive officers accountable, including by removal from office.  *See, e.g.*, *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 492–93 (2010) (citing *Myers v. United States*, 272 U.S. 52 (1926)); *Jarkesy*, 34 F.4th at 463-65 ("SEC ALJs are sufficiently insulated from removal that the President cannot take care that the laws are faithfully executed.").

78.    Because ALJs are insulated from removal by the president, given their status as officers of the Commission, their status deprives the president of his executive powers and, therefore, violates Article II of the U.S. Constitution.

79.    Mr. Hackert therefore seeks a declaratory judgment that any involvement in the Administrative Proceeding by an ALJ would be unconstitutional.

80.     Mr. Hackert also seeks an injunction enjoining the Commission from assigning an ALJ to preside over the Administrative Proceeding, since it would irreparably harm Mr. Hackert by subjecting him to an unconstitutional proceeding led by a hearing officer that is improperly insulated from the president's executive powers.

## **RELIEF REQUESTED**

WHEREFORE, Mr. Hackert prays that the Court award judgment in his favor on each of his causes of action, and:

a.     Enter a judgment pursuant to 28 U.S.C. § 2201 declaring that:  (i) the Administrative Proceeding violates Mr. Hackert's rights to due process under the Fifth Amendment; (ii) the Administrative Proceeding violates Mr. Hackert's Seventh Amendment right to a jury trial; and (iii) the assignment of the Administrative Proceeding to, and its conduct by, an Administrative Law Judge is unconstitutional;

b.     Enjoin the Administrative Proceeding;

c.     Enjoin the Commission from assigning an Administrative Law Judge to the Administrative Proceeding;

d.     Award Mr. Hackert his costs and attorneys' fees in connection with this proceeding; and

e.  Grant Mr. Hackert such other and further relief as the Court deems just, proper,

and equitable under the circumstances.

Dated:  New York, New York
July 25, 2024

DEBEVOISE & PLIMPTON LLP

By: */s/ Andrew J. Ceresney*
Andrew J. Ceresney, Esq.
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000
aceresney@debevoise.com

Arian M. June, Esq.*
Stephan J. Schlegelmilch, Esq.*
Mark D. Flinn, Esq.*
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 383-8000
ajune@debevoise.com
sjschlegelmilch@debevoise.com
mflinn@debevoise.com

*Counsel for Plaintiff Edward F. Hackert*

* Admitted *pro hac vice*